Peter CARTER, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 49S00–0008–CR–507.

Supreme Court of Indiana.

April 22, 2002.

Michael E. Caudill, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Yvonne M. Carter, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

DICKSON, Justice.

The defendant, Peter Carter, was convicted of murder,[1] burglary as a class A felony,[2] two counts of criminal confinement as class B felonies,[3] and battery as a class C felony.[4] On appeal the defendant claims insufficient evidence to support his convictions, erroneous admission of evidence regarding a bite mark, erroneous admission of hearsay evidence, and erroneous jury instruction. We affirm the defendant's convictions.

### Sufficiency of the Evidence

The defendant claims the evidence was insufficient to support his convictions, arguing the evidence only shows his presence at the scene of the crimes. In addressing a claim of insufficient evidence, an appellate court must consider only the

1. Ind.Code § 35–42–1–1.

2. Ind.Code § 35–43–2–1.

3. Ind.Code § 35–42–3–3.

4. Ind.Code § 35–42–2–1.

probative evidence and reasonable inferences supporting the judgment, without weighing evidence or assessing witness credibility, and determine therefrom whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Marcum v. State*, 725 N.E.2d 852, 863 (Ind.2000).

The evidence discloses that Delwin Williams was at Christopher Moss's apartment with the defendant and Russell Lewis. Lewis began to hit Williams in the face with a pistol while asking him about a previous burglary. After telling Williams to cleanup, the trio made Williams lead them to his alleged co-burglar, Marvin Maxwell (also known as "Cain"). This procession consisted of Lewis, holding a gun on Williams, on one side and Moss on the other with the defendant directly behind Williams. Upon finding the apartment where Cain was, the three men forced their way inside and beat him. Three witnesses variously testified that they saw the defendant strike Cain multiple times with his fist, a bottle, a handgun, and a bike. The three men then dragged Cain back to Moss's apartment where he was shot in the head. And at some point during the beating, the defendant bit Cain on the shoulder leaving an impression.

The evidence was sufficient to show that the defendant was a participant in the beating and confinement of Williams; the burglary of the first apartment; and the beating, confinement, and killing of Cain.

### Bite Mark Evidence

The defendant contends that the trial court erred in allowing bite mark evidence from a forensic odontologist to be admitted into evidence. Dr. Edwin Parks testified that the bite mark on the victim was more likely than not caused by the defendant. The defendant claims a proper foundation of this evidence's reliability was not laid pursuant to Indiana Evidence Rule 702.[5] "In determining reliability ... there is no specific 'test' or set of 'prongs' which must be considered in order to satisfy Indiana Evidence Rule 702(b)." *McGrew v. State*, 682 N.E.2d 1289, 1292 (Ind.1997). It is well established that the trial court's determination regarding the admissibility of expert testimony under Rule 702 is a matter within its broad discretion, and will be reversed only for abuse of that discretion. *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 459 (Ind.2001); *Cook v. State*, 734 N.E.2d 563, 570 (Ind. 2000); *McGrew*, 682 N.E.2d at 1292.

In 1977 this Court could find "no reason why [bite mark] evidence should be rejected as unreliable...." *Niehaus v. State*, 265 Ind. 655, 661, 359 N.E.2d 513, 516 (1977). The analysis of bite mark evidence was a relatively new procedure in 1977, *id.*, and the defendant does not argue that it has become less reliable. He argues instead that *Niehaus* is not controlling because it preceded *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), in which the United States Supreme Court construed Rule 702 of the Federal Rules of Evidence. *Niehaus* also preceded our adoption of the Indiana Rules of Procedure, including Ind. Evid. Rule 702(a) and (b), which differs from FED.R.EVID. 702, but coincidentally

---

**5.** Ind.Evidence Rule 702. Testimony by Experts:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

training or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

announced an analytical framework for Indiana procedure akin to the federal analysis declared shortly thereafter in *Daubert.* We noted in *McGrew* that:

> [F]ederal case law interpreting the Federal Rules of Evidence is not binding upon the determination of state evidentiary law.... Contrary to the arguments made by the defendant, when analyzing Indiana Evidence Rule 702(b)—the adoption of which preceded *Daubert*—we find *Daubert* helpful, but not controlling.

*Id.* at 1290; *see also Steward v. State,* 652 N.E.2d 490, 498 (Ind.1995).

The defendant also urges that *Steward* and *McGrew* were both decided before *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), and that *Kumho Tire* applied *Daubert* to all types of expert testimony. He argues that state standards cannot drop below the minimum standards set by the federal Constitution. We reject this argument because *Kumho Tire* represented only an interpretation of federal evidence law, specifically the construction and application of Rule 702 of the Federal Rules of Evidence. The United States Supreme Court did not hold that Rule 702 was a requirement of the Federal Constitution. Rule 702 of the Federal Rules of Evidence is not a minimum constitutional requirement applicable to the states. We acknowledge that the United States Supreme Court unanimously held in *Kumho Tire* that a federal trial judge's gate keeping obligation under *Daubert* applies not only to scientific evidence but also to technical and other specialized knowledge. The issue before us, however, is not whether to modify Indiana's procedural jurisprudence or to replace the language of our Evidence Rule 702 with the different language of its federal counterpart to embrace the rationale of the United States

Supreme Court in *Kumho Tire.* The defendant does not seek such relief here, arguing instead without elaboration that *Kumho Tire* is binding on Indiana state court practice. It is not.

We found no error in *McGrew,* which involved hair comparison analysis, and noted:

> Inherent in any reliability analysis is the understanding that, as the scientific principles become more advanced and complex, the foundation required to establish reliability will necessarily become more advanced and complex as well. The converse is just as applicable....

*Id.* at 1292. Like *McGrew,* which involved hair comparison analysis, the bite mark method of identification in *Niehaus* "[was] simply a matter of comparison of items of physical evidence to determine if they are reciprocal." *Niehaus,* 265 Ind. at 661, 359 N.E.2d at 516; *cf. Jervis v. State,* 679 N.E.2d 875, 881 (Ind.1997) (observations of a witness with specialized knowledge, and the physical evidence related to it, are not "scientific principles" governed by Ind. Evid. Rule 702(b)).

We find that the trial court did not abuse its discretion in finding the bite mark evidence to be sufficiently reliable to allow its admission.

█ The defendant also argues that the probative value of the bite mark evidence was outweighed by its danger of unfair prejudicial effect under Indiana Rule of Evidence 403. The evidence of the bite mark was highly probative to rebut the defendant's contention that he was not a participant in the beating or murder of the victim but was merely present. While the evidence is prejudicial toward the defendant in that it supports a finding that he was an active participant, the evidence does not present a danger of unfair prejudice. As we noted in *Richmond v. State,*

685 N.E.2d 54 (Ind.1997), "all relevant evidence is 'inherently prejudicial' in a criminal prosecution, so the inquiry boils down to a balance of probative value against the likely unfair prejudicial impact the evidence may have on the jury." *Id.* at 55–56. When determining likely unfair prejudicial impact, "courts will look for the dangers that the jury will substantially overestimate the value of the evidence or that the evidence will arouse or inflame the passions or sympathies of the jury." *Evans v. State,* 643 N.E.2d 877, 880 (Ind.1994). The defendant seems to claim that the jury substantially overestimated the value of the bite mark evidence basing its finding of guilt on the bite mark evidence alone. As seen by our discussion above of the sufficiency of the evidence, the risk that the jury overly relied on the bite mark evidence is miniscule. Such matters are within the sound discretion of the trial court. The trial court clearly did not err in finding the bite mark evidence admissible.

### Hearsay

The defendant also contends the trial court erroneously admitted hearsay over the defendant's objection. Challenging the admission of testimony that one of his "companions was asking where is Cain," the defendant argues that this "was being used to assert that [the defendant] and others were looking for Cain ... and wanted revenge for ... [Cain's] break-in at an apartment belonging to a relative of one of his companions." Br. of Appellant at 16–17. The State responds that the statement was "merely offered to show that the question was asked and to show the witness's response to the question." Br. of Appellee at 7. The following colloquy is the subject of the defendant's challenge:

[Prosecutor]: Now, are you asked anything specific about Cain ...?

[Witness]: Where was he, have I seen him.

[Prosecutor]: Okay, and had you actually seen Cain that day?

[Witness]: I had seen him earlier.

Record at 453.

■ Although uttered as a question, the grammatical form of the utterance does not govern whether it fits the definition of hearsay. *Powell v. State,* 714 N.E.2d 624, 627–28 (Ind.1999). "An utterance that is in the form of a question can in substance contain an assertion of a fact." *Id.* "If a report of a question or command in effect transmits the questioner's claimed observations, the need for cross-examination is as great as if the witness reported a direct statement." *Id.* Hearsay is defined by Ind.Evid. R. 801(c) as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

■ The declarant's response contained no assertion of fact offered to prove the truth of the matter asserted. There were no claimed observations or other facts asserted. The statement does not meet the definition of hearsay. It was not error for the trial court to admit the testimony.

### Jury Instruction

■ The defendant contends that the trial court erred in instructing the jury regarding accomplice liability. Instructing the jury lies within the sole discretion of the trial court, and considering the instructions as a whole and in reference to each other, we will not reverse for an abuse of that discretion unless the instructions as a whole mislead the jury as to the law in the case. *Edgecomb v. State,* 673 N.E.2d 1185, 1196 (Ind.1996).

■ The defendant objects to Final Instruction 15C:

A person is responsible for the actions of another person, when, either before or during the commission of a crime, he knowingly aids, induces, or causes the other person to commit a crime. To aid is to knowingly support, help, or assist in the commission of a crime.

In order to be held responsible for the actions of another, he need only have knowledge that he is helping in the commission of a crime. He does not have to personally participate in the crime nor does he have to be present when the crime is committed.

Proof of the defendant's failure to oppose the commission of a crime, companionship with the person committing the offense, and conduct before and after the offense may be considered in determining whether aiding may be inferred.

Record at 182. Even though this instruction states that the defendant must have "knowledge that he is helping in the commission of a crime," the defendant contends that this instruction "improperly focus[ed] the jury's attention upon [the defendant's] perceived acquiescence to the crimes being committed by others." Br. for Appellant at 23. The jury must be instructed that accomplice liability requires proof that the defendant engaged in voluntary conduct in concert with his accomplice. *Small v. State*, 531 N.E.2d 498, 499 (Ind.1988). Final Instruction 15D made this explicit:

The mere presence of a Defendant where a crime is being committed, even coupled with knowledge by the Defendant that a crime is being committed, or the mere acquiescence by a Defendant in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding, inducing, or causing a crime.

You must not convict the Defendant of aiding, inducing, or causing an offense unless you find beyond a reasonable doubt that the Defendant knowingly or intentionally participated in some conduct of an affirmative nature.

Record at 183. These two instructions were a correct statement of law and did not mislead the jury. The trial court did not err in the instructions it gave to the jury.

The defendant's convictions are affirmed.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.