**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 27 2014, 9:05 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LAWRENCE D. NEWMAN**
Newman & Newman, P.C.
Noblesville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE M. COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| AUSTIN M. SCHOLL, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 29A02-1309-CR-801 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Steven R. Nation, Judge
Cause No. 29D01-1203-FB-2662

**March 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Austin Matthew Scholl appeals after a jury trial from his convictions of Criminal Deviate Conduct[1] as a class B felony and Sexual Battery[2] as a class D felony, contending that the trial court erred by admitting a statement previously made by Scholl on a social media website, and by denying Scholl's motion to exclude the State's expert witness's testimony at trial.

We affirm.

Late in the evening on March 17, 2012, E.H. and her husband, Cory, invited Scholl, their long-time friend, to visit them at their home in order to discuss some comments Scholl had recently posted on his Facebook page. Approximately a week prior, Scholl had posted the following status on his Facebook page: "why do people act like they don't wanna fuck? Honestly". *State's Exhibit* 1. E.H. and Scholl had been friends for years and had performed together in a folk band. Scholl's comments on Facebook made E.H. uncomfortable. E.H. had no romantic interest in Scholl and, although married, had told Scholl that she was gay.

Scholl arrived at E.H. and Cory's home at approximately midnight. E.H. was intoxicated, having celebrated St. Patrick's Day earlier in the evening. Scholl, Cory, and E.H. sat in the living room discussing topics such as Scholl's Facebook comments, religion, monogamy in marriage, and E.H.'s sexuality. At some point, Cory left the room and went down the hallway to the couple's bedroom.

---

[1] Ind. Code Ann. § 35-42-4-2 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.).

[2] I. C. Ann. § 35-42-4-8 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.).

E.H. and Scholl continued to talk, and E.H. played a song for Scholl that she had written. Scholl expressed to E.H. that she was speaking the words of his heart or mind, and his belief that E.H. was the reincarnation of Bob Marley. Scholl stated that he considered E.H. to be his soul mate. E.H. expressed her agreement and belief that she had connected with Scholl as a friend on a deeper level. Scholl asked E.H. if she ever thought of him that way, and glanced down the hallway where Cory slept. E.H. replied, "I am now," but reminded Scholl that she thought she was gay. *Transcript* at 368-69. Scholl also asked E.H. why she had never given him "head," and E.H. laughed. *Id.* at 368. Scholl moved from his chair and sat next to E.H. on the couch. E.H. told Scholl, "I feel like you're sitting next to me because you want to do something with me and that's not happening." *Id.* at 371.

Scholl told E.H. that he thought she was manipulating him. E.H. replied, "I don't know why you think that, but okay." *Id.* at 372. E.H. relaxed on the couch with her eyes closed and her head back, until she felt Scholl's hand on her stomach. Scholl then kissed E.H. E.H. sat in awkward silence as Scholl began masturbating next to her. E.H. closed her eyes, and, when she opened them, discovered that Scholl had moved in front of her, with his penis outside his pants as he continued masturbating. Scholl grabbed E.H.'s head with one hand and tried to insert his penis inside E.H.'s mouth. E.H. resisted, told him not to do that, and pushed against Scholl's hip. E.H. continued to tell Scholl no, but Scholl placed his penis into E.H.'s mouth. E.H. pushed Scholl away and said, "no, don't do this, you will regret this in the morning." *Id.* at 374. Scholl grabbed E.H.'s head again, used his thumb and finger to open E.H.'s mouth, and thrust his penis inside E.H.'s mouth.

E.H. leaned to the right as if to vomit so that she was lying back on the couch on her side. Scholl then straddled E.H. and inserted his penis into E.H.'s mouth. E.H. said, "no, no, no, don't, don't, don't" but did not fight Scholl. *Id*. at 375. Scholl thrust his penis into E.H.'s mouth and ejaculated. E.H. spit Scholl's ejaculate into a sock, laughed, and made a joke to Scholl. Scholl replied, "I'm an asshole. I'm sorry for mouth-raping you." *Id*. at 377. Scholl then extended his hand to E.H. and she shook it.

At approximately that time, Cory entered the room and recognized that something was wrong. E.H. asked Cory to tell Scholl that Scholl was not a bad guy, and Cory complied before returning to bed. E.H. then went into the bathroom, vomited twice, and went to her bedroom, where she entered the closet and cried. She texted two friends and explained that she had been sexually assaulted by Scholl. One of E.H.'s friends advised her to call the police, go to the hospital, and to tell Cory.

When E.H. returned to the living room, she told Scholl to leave before "someone beats the shit out of you." *Id*. at 380. Scholl said, "I'm sorry." *Id*. E.H. asked Scholl why he had assaulted her, to which he replied, "I don't know." *Id*. The two then hugged and Scholl left the house. After Scholl left, E.H. told her husband what had happened. E.H. was calm at first but then began to weep. Cory drove E.H. to the hospital where a nurse swabbed her mouth and collected a sample of Scholl's semen from E.H.'s hair.

Detective Michael Haskett of the Noblesville Police Department interviewed E.H. and then met Scholl at Scholl's house on March 18, 2012. Detective Haskett asked Scholl if something had happened the previous night. Scholl lowered his head and replied that

4

something had happened. Scholl agreed to an interview and was transported to the police station. Detective Haskett read Scholl his *Miranda* rights and admitted that he "pretty much forced [E.H.] to give [him] a blow job." *State's Exhibit* 8. Scholl further admitted that E.H. had told him not to put his penis in her mouth. Scholl claimed that he thought that "being forced" was "what turned her on." *Id*. Scholl acknowledged his comments and apology to E.H. after he had assaulted her.

The State charged Scholl with criminal deviate conduct as a class B felony and sexual battery as a class D felony. At trial, Scholl objected on relevancy grounds to the State's use of Scholl's Facebook post. The evidence was admitted over Scholl's objection. Later, Scholl sought to exclude the testimony of the State's expert witness, on the ground that expert testimony was not necessary as the evidence in question was within the common knowledge of a lay person. The trial court allowed the State's expert to testify so long as the testimony did not stray into the area of E.H.'s credibility or constitute improper vouching. The jury found Scholl guilty as charged. The trial court merged the class D felony conviction and imposed a ten-year sentence on Scholl's conviction for the class B felony, with six years executed and four years suspended. Scholl now appeals.

Scholl argues that the trial court erred by admitting the comment Scholl had previously posted on his Facebook page. We review challenges to the admission of evidence pursuant to the following standard:

> Our standard of review for the admissibility of evidence is well settled. The admission or exclusion of evidence lies within the trial court's sound discretion and is afforded great deference on appeal. We will reverse the trial court's ruling on the admissibility of evidence only for an abuse of discretion. An

5

abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor.

*Meister v. State*, 912 N.E.2d 412, 414 (Ind. Ct. App. 2009) (internal citations omitted), *trans. denied*. "Evidence which is not relevant is not admissible." Ind. Evidence Rule 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401.

About a week prior to the sexual assault, Scholl posted on his Facebook page, "why do people act like they don't wanna fuck? Honestly." *State's Exhibit* 1. E.H. and Cory testified that they had invited Scholl to their house to discuss the comments Scholl posted on his Facebook page. The comment was relevant because it was illustrative of Scholl's state of mind when he committed the crime. This comment showed Scholl's belief that E.H. desired sexual relations with him, even though she told Scholl that she had no romantic interest in him.

Several times that evening Scholl attempted to persuade E.H. to perform oral sex on him, by asking her why she had not done so and by attempting to forcibly insert his penis into E.H.'s mouth. Scholl did so in spite of E.H.'s frequent pleas for him to stop. The Facebook post was relevant to show that Scholl did not believe E.H. when she said that nothing would happen between them, and explains his comment to E.H. that he believed she was manipulating him. Additionally, Scholl acknowledged to Detective Haskett that E.H. had told him not to insert his penis into her mouth, but he believed that she wanted oral sex

6

forced upon her because he thought "that's what turned her on." *State's Exhibit* 8.

Scholl asserts that the comment he posted on Facebook subjected him to unfair prejudice. Our Supreme Court has observed that "all relevant evidence is 'inherently prejudicial' in a criminal prosecution." *Carter v. State*, 766 N.E.2d 377, 382 (Ind. 2002) (quoting *Richmond v. State*, 685 N.E.2d 54, 55 (Ind. 1997)). Upon review, we must balance the probative value of the evidence against the likely unfair prejudicial impact the evidence may have on the jury. *Carter v. State*, 766 N.E.2d 377. "When determining likely unfair prejudicial impact, 'courts will look for the dangers that the jury will substantially overestimate the value of the evidence or that the evidence will arouse or inflame the passions or sympathies of the jury.'" *Id*. at 382 (quoting *Evans v. State*, 643 N.E.2d 877, 880 (Ind. 1994)).

The record does not indicate that the jury overestimated the value of this evidence. Neither E.H. nor Cory testified about the content of the Facebook post. The statement was introduced at the beginning of the trial. During closing argument, the State reiterated that the reason E.H. and Cory had invited Scholl over to their house was to discuss the post. The trial court did not abuse its discretion.

Assuming *arguendo* that the trial court abused its discretion, that error was harmless. The improper admission of evidence constitutes harmless error when the conviction is supported by substantial independent evidence of guilt such that the court on review is satisfied that there is no substantial likelihood that the challenged evidence contributed to the conviction. *R.W. v. State*, 975 N.E.2d 407 (Ind. Ct. App. 2012). Such is the case here.

7

Both direct and circumstantial evidence presented at trial established that Scholl forced E.H. to perform or submit to deviate sexual conduct. E.H. gave compelling testimony about the details of the crime. E.H. made it clear that Scholl's sexual advances were unwelcome. E.H. repeatedly resisted Scholl's numerous attempts to insert his penis in her mouth by telling him not to do so and by pushing him away. Scholl persisted until he succeeded. Scholl then apologized to E.H. after the assault.

Shortly after the assault, E.H. sent several text messages to a friend recounting the assault. The content of the text messages corroborated E.H.'s testimony at trial. Scholl acknowledged to Detective Haskett that he knew why he was being interviewed, and admitted that something had happened on the night in question. Scholl admitted to the officer that he had "pretty much forced [E.H.] to give [him] a blow job." *State's Exhibit* 8. Scholl further admitted that E.H. had told him not to place his penis in her mouth, but claimed that he believed that the use of force excited her. Ample independent evidence of Scholl's guilt is present in the record. Any error, therefore, is harmless and does not warrant reversal.

Scholl asserts that the trial court erred by denying his motion to exclude the testimony of the State's expert witness. Because this issue involves review of a ruling on the admissibility of evidence, we use the standard of review set forth above to determine whether the trial court erred.

8

The trial court allowed State's witness Andrea Hern to testify as an expert witness on the topic of the varying reactions of victims of sexual assault. Ind. Evid. Rule 702 provides as follows:

> (a) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.
>
> (b) Expert scientific testimony is admissible only if the court is satisfied that the expert testimony rests upon reliable scientific principles.

Under this rule, a witness may be qualified as an expert by virtue of "knowledge, skill, experience, training, or education." *Kubsch v. State*, 784 N.E.2d 905, 921 (Ind. 2003). Only one of those characteristics is necessary to qualify a witness as an expert. *Kubsch v. State*, 784 N.E.2d 905. It is within the trial court's discretion to decide whether a witness qualifies as an expert witness. *Id.*

Hern was a licensed mental health counselor with twenty-two years of experience and specialized in human sexuality and sexual trauma. She held a master's degree in counseling psychology and had considerable experience counseling victims of sexual assault. Hern was a member of the International Society of Trauma and the Indiana Coalition Against Sexual Assault. She had given hundreds of presentations on the topic of sexual assault, and kept up with literature regarding adult victims' responses to sexual assault. The trial court properly found that Hern qualified as an expert witness.

Scholl asserts that Hern's testimony was within the common knowledge of any of the jurors and that the substance of her testimony could have been presented as argument during closing argument. In cases of domestic violence, we have observed that the reactions and

9

behaviors of domestic violence victims are not commonly understood by lay persons, such that the use of expert testimony is endorsed. *Odom v. State*, 711 N.E.2d 71 (Ind. Ct. App. 1999). Although this is not a case involving domestic violence, per se, the dynamics are similar enough that we believe the principle applies here as well.

The crime here was committed by the victim's close friend, and E.H.'s reactions to the assault might not conform to conduct a lay person would expect from a victim of a sex crime. E.H. testified that after the assault she did "lots of weird things." *Transcript* at 413. E.H.'s reactions were relevant to her credibility. Thus, Hern's testimony and opinion about varying reactions of victims of sexual assaults likely aided the jurors to understand the evidence in this case. Hern was qualified to form an opinion on that topic and her opinion was useful to the jurors.

Furthermore, Hern's testimony did not stray into the realm of impermissible vouching for E.H. Hern gave no opinion about E.H.'s credibility and did not link her opinion to E.H.'s testimony. Hern did not testify that she had previous knowledge of the case or that she had counseled E.H. In sum, Hern's testimony consisted of general remarks about human behavior following sexual trauma. She did not comment on whether E.H.'s reactions were appropriate or if E.H. behaved consistently with someone who had been sexually victimized. Where an expert's testimony explains the behavior of victims, and is not based on personal knowledge, the testimony does not constitute impermissible vouching. *See Iqbal v. State*, 805 N.E.2d 401 (Ind. Ct. App. 2004) (expert on topic of domestic violence explained behavior of victims, was not based on personal knowledge, and did not constitute

impermissible vouching).  The trial court did not abuse its discretion by allowing Hern's testimony.

Judgment affirmed.

MATHIAS, J., and PYLE, J., concur.