## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 22 2016, 9:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karen Celestino-Horseman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Justin C. Cherry,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 22, 2016

Court of Appeals Case No.
55A05-1508-CR-1151

Appeal from the Morgan Superior Court.
The Honorable Christopher L. Burnham, Judge.
Cause No. 55D02-1402-FB-292

**Sharpnack, Senior Judge**

## Statement of the Case

Justin Cherry appeals from his conviction of and sentence for Class B felony armed robbery[1], enhanced by his status as an habitual offender. We affirm.

## Issues

Cherry presents the following issues for our review:

  I.   Whether the trial court erred by admitting testimony and evidence about GPS tracking showing Cherry's location at the time of the robbery; and

  II.  Whether Cherry's sentence is inappropriate in light of the nature of the offense and the character of the offender.

## Facts and Procedural History

On January 28, 2014, Jayme Hicks, Jared Mynatt, and Cherry, who all lived in Indianapolis, drove to Mooresville, Indiana, and parked the car at an apartment complex. A few minutes before noon, Cherry stayed in the car while Hicks and Mynatt walked to a nearby Pebbles Marathon convenience store where Toni Wilson was working. Hicks, who was pregnant, asked if she could use the restroom. Because the restroom is located behind the counter, employees are not supposed to allow others to use it. However, on this occasion, Wilson allowed Hicks to do so.

---

[1] Ind. Code § 35-42-5-1 (1984).

[4] After a very brief time, Hicks exited the restroom and she and Mynatt discussed whether they had enough money to make a purchase. The two left the store without buying anything. After Hicks and Mynatt returned to the car, Cherry exited the car, leaving the car door wide open despite the extremely cold weather, and headed toward the gas station. While Cherry was gone, Mynatt backed the car into the parking space.

[5] Cherry entered the gas station store a couple of minutes after Hicks and Mynatt had left. He selected a 2-liter bottle of Mountain Dew, came to the counter, and asked Wilson for some cigarettes. Per store policy because of his youthful appearance, Wilson asked Cherry for identification. Instead of retrieving his identification, Cherry pulled out a gun, pointed it at Wilson and responded, "I won't need ID today." Tr. p. 185.

[6] Cherry told Wilson to open the cash register drawer and to give him the money. After Wilson complied, Cherry left the store and returned to the car, jumping in the open door and lying on the back floorboard while Mynatt rapidly drove away. Wilson, who was terrified, first called her boss's telephone number and then, immediately called the police. On their return drive to Indianapolis, Mynatt and Cherry discussed how they would split the proceeds of the robbery. Approximately $460 to $480 was taken during the robbery.

[7] Fresh snow had fallen that day. Officers arrived at the scene, and, while investigating the robbery, found recent footprints in the snow made by someone wearing a Nike shoe with a distinct tread pattern. Officers followed the

footprints from the gas station to the apartment complex. During a later search of Cherry's house, officers found a pair of Nike shoes that were the same size and had a tread pattern matching the prints left in the snow.

[8] Cherry was on GPS monitoring at the time of the armed robbery. GPS records showed that on January 28, 2014, Cherry had traveled south on SR 67 to Mooresville, was in the vicinity of the gas station at 12:01 p.m., and then traveled north on SR 267.

[9] The State charged Cherry with several offenses, including Class B felony armed robbery, Class B felony unlawful possession of a firearm by a serious violent felon, Class C felony carrying a handgun without a license, two counts of Class C felony intimidation, Class D felony theft, Class D felony pointing a firearm, and a separate allegation that Cherry was an habitual offender.

[10] The parties and the trial court discussed bifurcation of the trial. Cherry admitted that he committed unlawful possession of a firearm by a serious violent felon and waived a jury trial on that count. He also admitted that he had two prior, unrelated felony convictions, thus qualifying as an habitual offender.

[11] Before trial, Cherry filed a motion in limine on Indiana Evidence Rule 404(b) grounds, requesting the exclusion of evidence of prior bad acts, particularly evidence that Cherry was on GPS monitoring through Marion County Community Corrections at the time of the offense because of his prior robbery and attempted robbery convictions. The trial court found that the probative

value of the GPS evidence greatly outweighed any prejudicial effect, but granted the motion in part, prohibiting the supporting witness from testifying that he worked for Community Corrections or the reason why Cherry was on GPS monitoring at the time of the offense.

[12] At the beginning of trial, the State dismissed one count of Class C felony intimidation. After the presentation of the State's case, the trial court dismissed the count alleging carrying a handgun without a license and the count alleging pointing a firearm.

[13] At the conclusion of the trial, the jury returned guilty verdicts on each of the remaining counts. Due to double jeopardy concerns, however, the trial court entered judgment of conviction on only the armed robbery charge enhanced by Cherry's status as an habitual offender. After considering aggravating and mitigating factors, the trial court imposed a sentence of twenty years on the robbery conviction enhanced by twenty years for the habitual offender adjudication. Cherry now appeals.

# Discussion and Decision

## I. Admissibility of Evidence

[14] Cherry argues that the trial court erred by admitting testimony about GPS monitoring and admitting GPS exhibits, raising a lack of probative value of the evidence, failure to show reliability of the particular GPS system, and other foundational flaws.

The admission of evidence is left to the sound discretion of the trial court. *Rasnick v. State*, 2 N.E.3d 17, 23 (Ind. Ct. App. 2013), *trans. denied*. Our review of the trial court's decision is for an abuse of that discretion. *Id.* An abuse of discretion is found only if the decision is clearly against the logic and effect of the facts and circumstances before the trial court, or if the trial court has misinterpreted the law. *Id.*

The sole objection made to the evidence and testimony at trial was on grounds of Indiana Evidence Rule 404(b). The Rule provides:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

Evid. R. 404(b)(1).

This rule is designed to prevent the jury from determining a defendant's present guilt on the basis of his past propensities—the "forbidden inference." *Remy v. State*, 17 N.E.3d 396, 399 (Ind. Ct. App. 2014), *trans. denied*. However, such evidence may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid. R. 404(b)(2). This list of permissible purposes is illustrative but not exhaustive. *Freed v. State*, 954 N.E.2d 526, 530 (Ind. Ct. App. 2011).

In assessing the admissibility of 404(b) evidence, the court must: (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect

pursuant to Evidence Rule 403. *Bishop v. State*, 40 N.E.3d 935, 951 (Ind. Ct. App. 2015), *trans. denied*. The trial court is afforded wide latitude in weighing probative value against possible prejudice under Rule 403. *Id.*

[19] As courts on appeal have long observed, all relevant evidence of guilt is inherently prejudicial in a criminal prosecution, so the inquiry boils down to a balance of probative value against the likely unfair prejudicial impact the evidence may have on the jury. *Carter v. State*, 766 N.E.2d 377, 382 (Ind. 2002). "When determining likely unfair prejudicial impact, 'courts will look for the dangers that the jury will substantially overestimate the value of the evidence or that the evidence will arouse or inflame the passions or sympathies of the jury.'" *Id.* (quoting *Evans v. State*, 643 N.E.2d 877, 880 (Ind. 1994)).

[20] In the present case, part of Cherry's defense involved a challenge to Hicks's credibility. Her testimony placed him at the scene of the crime at the time it was committed. Ian Doyle testified that through his employment he monitors clients on GPS, and that he was monitoring Cherry on January 28, 2014. Doyle explained that there are two parts to the GPS equipment. The client wears an anklet around his leg that corresponds with a hand held cell phone to allow tracking of the client's movements. Doyle then testified about the contents of State's exhibits 2 and 3, which showed Cherry's location as monitored by the GPS tracking system. The evidence placed Cherry at the scene of the crime at the time it was committed. No objection was made to the testimony or the exhibits except for the objection raised under Evid. Rule

404(b). The trial court placed limitations on Doyle's testimony with which Doyle complied.

[21] Wilson also testified at trial and identified Cherry in court as the person who robbed the gas station store, although she had not been able to select him from a photo array prior to trial. Cherry called Mynatt, who had already been tried and convicted of aiding, inducing, or causing armed robbery, to testify at trial. Mynatt testified that it was he and not Cherry who committed the robbery. However, he testified that Hicks and Cherry were with him in Mooresville at the time of the armed robbery. When Cherry entered the store, his image was captured on surveillance video. Both Wilson and Hicks identified Cherry as the person in the video. Consequently, the GPS tracking evidence was of significant probative value to corroborate and support proof of Cherry's presence at the store.

[22] The trial court did not abuse its discretion by admitting the GPS tracking testimony and evidence. The evidence was relevant to show opportunity and identity. Further, the trial court's restrictions on testimony regarding why Cherry was being monitored were reasonable and agreed to by the defense prior to trial. Therefore, the most potentially unfair prejudicial evidence—that Cherry was being monitored by Marion County Community Corrections for previously committing the same offense—was not before the jury.

[23] Cherry argues for the first time on appeal that there were several foundational flaws such that the trial court's decision to admit the evidence should be

reversed. More specifically, Cherry argues that the State did not present testimony qualifying Doyle as an expert witness, and there was no testimony about the reliability of GPS tracking systems in general and this GPS system in particular.

[24] "It is well settled that Indiana's appellate courts look with disfavor upon issues that are raised by a party for the first time on appeal or in original actions without first raising the issue in the trial court." *State v. Peters*, 921 N.E.2d 861, 867 (Ind. Ct. App. 2010). Appellate courts will not find that a trial court has erred as to an issue or argument that it never had the opportunity to consider. *Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004). "When a defendant fails to make a contemporaneous objection to the admission of evidence at trial, however, any error is generally waived for purposes of appeal." *Orr v. State*, 968 N.E.2d 858, 860 (Ind. Ct. App. 2012), *trans. denied*. Consequently, Cherry's new arguments on appeal are waived.

[25] "Appellate courts may, on rare occasions, resort to the fundamental error exception to address on direct appeal an otherwise procedurally defaulted claim." *Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008). The fundamental error exception is extremely narrow, however, and available only when the record reveals a clearly blatant violation of basic and elementary principles such that the harm or potential for harm cannot be denied, and the violation is so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.* Here, however, the introduction of the GPS tracking evidence did not render Cherry's trial fundamentally unfair. The evidence was corroborative of other

testimony including that offered by Cherry, placing him at the scene of the crime at the time it was committed.

## II. Sentencing

[26] We first address Cherry's argument that the trial court abused its discretion by failing to give sufficient weight to evidence that he completed classes to improve himself while in jail awaiting trial. Our Supreme Court has rejected the argument that a trial court abuses its discretion by failing to properly weigh aggravating and mitigating factors. *Phelps v. State*, 969 N.E.2d 1009, 1019 (Ind. Ct. App. 2012) (citing *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g by Anglemyer v. State*, 875 N.E.2d 218), *trans. denied*. Furthermore, Cherry's claim is not supported by cogent argument. We find no abuse of discretion in sentencing.

[27] Next, Cherry argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender. A sentence authorized by statute will not be revised unless the sentence is inappropriate in light of the nature of the offense and the character of the offender. Indiana Appellate Rule 7(B). We may not merely substitute our opinion for that of the trial court. *Sallee v. State*, 777 N.E.2d 1204, 1216 (Ind. Ct. App. 2002), *trans. denied*. In determining the appropriateness of a sentence, a court of review may consider any factors appearing in the record. *Clara v. State*, 899 N.E.2d 733, 736 (Ind. Ct. App. 2009). The question for our review is not whether another sentence is more

appropriate, but rather, whether the sentence imposed is inappropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012).

[28] Cherry was convicted of one count of Class B felony armed robbery, enhanced by his status as an habitual offender. A person who commits a Class B felony offense prior to July 1, 2014, shall be imprisoned for a fixed term of between six and twenty years with the advisory sentence being ten years. Ind. Code § 35-50-2-5 (2005). Persons whose habitual offender status is alleged prior to July 1, 2014, shall be sentenced to an additional fixed term not less than the advisory sentence for the underlying offense nor more than three times the advisory sentence for the underlying offense but not to exceed thirty years. Ind. Code § 35-50-2-8 (2005). Cherry received a sentence of twenty years on the underlying felony enhanced by an additional twenty years.

[29] With respect to the nature of the offense, Cherry committed the armed robbery less than two months after he was released from the Department of Correction for a prior robbery conviction. Wilson was so traumatized by the robbery that she initially quit her job. Cherry involved two other people in the robbery, having them drive him to and from the gas station and "case" the inside of the building before he entered and committed the offense. Appellee's Br. p. 23.

[30] With respect to the character of the offender, Cherry, who was twenty-four at the time of the current offense, had a significant criminal history. As a juvenile, he had five referrals to juvenile court. He had true findings of possession of marijuana and burglary. He violated his juvenile probation when he was

sixteen years old and was waived to adult court. As an adult, Cherry has been convicted once of carrying a handgun without a license, twice of theft, and twice of robbery. Each period of probation or community supervision has resulted in a revocation except for Cherry's first juvenile case at the age of twelve.

[31] He was serving part of his sentence for robbery and attempted robbery through Marion County Community Corrections when he committed this offense. He possessed a firearm when he was forbidden to do so. Cherry claims that he gets an "adrenaline rush" when he commits crimes and that he does not worry about other people's problems. Appellant's App. p. 123. Cherry was assessed as a high risk to commit further offenses. Cherry uses marijuana daily and has used methamphetamine, cocaine, and heroin.

[32] Cherry has not met his burden of persuading us that his sentence of twenty years enhanced by an additional twenty years is inappropriate in light of the nature of the offense and the character of the offender.

# Conclusion

[33] In light of the foregoing, we affirm the trial court's decision.

Baker, J., and May, J., concur.