**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**JAMES C. SPENCER**
Dattilo Law Office
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
**LARRY D. ALLEN**
Deputies Attorney General
Indianapolis, Indiana

**FILED**

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ERIC RASNICK, )<br><br>    Appellant-Defendant, )<br><br>         vs. )<br><br>STATE OF INDIANA, )<br><br>    Appellee-Plaintiff. ) | No. 39A01-1211-CR-526 |

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable Ted R. Todd, Judge
Cause No. 39C01-1109-FB-888

**November 20, 2013**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Eric Rasnick ("Rasnick") was convicted in Jefferson Circuit Court of Class B felony burglary and Class D felony theft and sentenced to the Department of Correction for an aggregate sentence of thirty-six years. Rasnick raises four issues on this appeal,[1] which we restate as follows:

    I.    Whether the trial court abused its discretion in admitting evidence of the "show-up" identification of Rasnick and items seized during the search based on that identification;

    II.    Whether the trial court abused its discretion in admitting GPS evidence against Rasnick;

    III.    Whether the evidence is sufficient to support Rasnick's conviction for burglary; and

    IV.    Whether Rasnick's sentence is inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

## Facts and Procedural History

On September 25, 2011, Rasnick spent the afternoon at a Madison, Indiana winery, sampling wine with Tamara Campbell ("Campbell"), Jessica Starks ("Starks"), and Brandon Eugene Stidham ("Stidham"). At the time, Rasnick was on parole for a previous burglary conviction and was being monitored by Scott County Community Corrections via a GPS tracking bracelet on his ankle.

The four individuals left the winery in Campbell's red, four-door 1996 Chevrolet Corsica, license plate number NN3776, with Rasnick driving. Rasnick drove the group to

---

[1] We held oral argument in this case on November 4, 2013, at Cathedral High School in Indianapolis, Indiana. We would like to extend our thanks to the students, staff, faculty, and administration of the school for their hospitality, and we commend counsel for the quality of their written and oral advocacy.

Hanover College, where he had previously worked laying carpet. Rasnick parked the car near the college's Wiley Hall dormitory and both Rasnick and Campbell went inside the dormitory. Starks and Stidham remained in the car.

Once inside, Rasnick and Campbell went to the basement of the dormitory and entered room number 33. There, they dumped several books from a blue backpack that they found in the room, took a laptop computer and three cameras, and left the room.

At the time of the burglary, room 33 was occupied by Hanover students Sarah Lathrop ("Lathrop") and Christiana Haynes ("Haynes"). Lathrop and Haynes had attended a local festival during the afternoon of September 25 and returned to the dorm between 5:00 and 5:30 p.m. Haynes stopped on the dormitory's first floor to talk to her resident assistant and Lathrop proceeded alone to the basement of the dormitory.

As Lathrop walked through the basement's lobby toward the room she shared with Haynes, she passed a male and female, neither of whom she recognized as Hanover students, but whom she later identified as Rasnick and Campbell. Rasnick and Campbell were walking towards Lathrop from the general direction of room 33. Rasnick was carrying a black trash bag. When Rasnick and Campbell passed Lathrop in the lobby, all three of them paused and looked at one another for a moment, and Lathrop made eye contact with both Rasnick and Campbell. Rasnick and Campbell then turned and hurried across the lobby and up the stairs leading out of the basement. Lathrop watched Rasnick and Campbell leave and noticed a black tattoo on the back of Rasnick's right calf as he climbed the stairs.

3

Rasnick and Campbell also passed by Haynes in a first floor hallway of the dorm as she waited outside her resident assistant's room. Haynes thought Rasnick and Campbell looked suspicious, so she watched them closely as they left the building. Haynes later identified Campbell as the person who was carrying the black trash bag. Like Lathrop, Haynes noticed the large black tattoo on the back of Rasnick's calf.

In the meantime, Lathrop had returned to her dorm room and noticed that the door was open. Once inside the room, she looked around and saw that the books that had been in her backpack had been dumped on the floor and that Haynes's laptop was missing from her desk. Haynes entered the room a moment later, as Lathrop was still looking around. Lathrop told Haynes that their "stuff was gone" and "asked where those two people went." Tr. p. 127. Haynes told Lathrop that she had seen Rasnick and Campbell walk out through the north entrance to the dormitory. The two girls then ran upstairs and outside just in time to see Rasnick, Campbell, and two others drive away in Campbell's car. Lathrop chased after the car and came within ten feet of it. As the car sped off, Lathrop noted the last four digits on the car's license plate: 3776.

Lathrop and Haynes then contacted campus security, and campus security called the Hanover police. Lathrop and Haynes reported to the responding officers that their dorm room had been burglarized and gave the officers a description of Rasnick, Campbell, and the car in which the two fled. They also described the car's partial license plate number and the items stolen from their room.

The Hanover police broadcast the description provided by the victims. A few minutes later, Jefferson County Sheriff's Deputy Shane Gibson spotted a car matching

4

that description traveling along Highway 356. He followed the car over the county line into Scott County, where the car pulled into the driveway of a residence. Rasnick, Campbell, Stark, and Stidham exited the car and raised the car's hood. Deputy Gibson approached the car from the passenger side and noticed a blue backpack on the floorboard of the front passenger side. He called for backup and ordered the four occupants to sit behind the car.

Police then radioed campus security to inform Lathrop and Haynes that a vehicle matching the description they had provided had been stopped and asked the two victims to come to the location where the car was stopped to try to make an identification. The police did not describe the occupants of the car or reveal the presence of the blue backpack in the car.

Hanover Police Sergeant Ian Pearson drove Lathrop and Haynes to the residence where the car was stopped. As Pearson's cruiser approached the scene, both victims spontaneously identified Campbell as the woman they had seen inside the dormitory. After exiting Pearson's car, both victims also quickly identified Rasnick.

Police then searched Campbell's car, apparently pursuant to her consent to do so. Inside, they found the blue backpack belonging to Lathrop. Inside the backpack, they discovered Haynes's laptop and one of Haynes's missing cameras. After searching the nearby roadside, police found another of Haynes's cameras, this one with a broken lens and serious water damage. A third camera was never recovered.

5

On September 26, 2011, Rasnick was charged with Class B felony burglary, Class D felony theft, and Class A misdemeanor driving while license suspended. The State also alleged that Rasnick was an habitual offender.

On September 18, 2012, Rasnick filed a motion to suppress. In the motion, Rasnick claimed that the victims' "show-up" identification of Rasnick was impermissibly suggestive and that evidence seized pursuant to the subsequent search of the vehicle should be suppressed as the result of the improper identification. On September 21, 2012, Rasnick filed a motion in limine seeking suppression of any evidence that revealed that he was on a Scott County Community Corrections GPS monitoring system at the time of the burglary. After a suppression hearing, the trial court denied both motions, but ruled that the GPS evidence could be used only to show Rasnick's locations during the relevant time period.[2]

A three-day jury trial commenced on September 25, 2012. The jury found Rasnick guilty of Class B felony burglary and Class D felony theft.[3] Thereafter, Rasnick admitted his habitual offender status. On October 24, 2012, the trial court sentenced Rasnick to an aggregate sentence of thirty-six years, eighteen years for burglary and eighteen years for being an habitual offender. Rasnick now appeals.

---

[2] At trial, the State presented to the jury an electronic record of Rasnick's movements between 5:00 p.m. and 5:45 p.m. on September 25, 2011. Rasnick's movements appeared as a red dot moving on a map. The evidence showed that, during the period in question, Rasnick first made a stop on Hanover's campus and then another stop at the residence along Highway 356 where he was later arrested.

[3] Before any evidence was presented, Rasnick pleaded guilty in open court to Class A misdemeanor driving while license suspended.

## I. Admission of Evidence

Rasnick makes two arguments regarding the admission of evidence. First, Rasnick argues that the trial court abused its discretion when it admitted the "show-up" identification by the two victims and the evidence seized pursuant to the identification. Second, Rasnick asserts that the trial court abused its discretion when it admitted GPS evidence of Rasnick's movements during the period of time in which the crime occurred.

In reviewing these claims, we note that the admission of evidence is within the sound discretion of the trial court, and we review the court's decision only for an abuse of that discretion. Boatner v. State, 934 N.E.2d 184, 186 (Ind. Ct. App. 2010). The trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. Id.

A. *Identification Evidence*

1. *Undue Suggestiveness*

Rasnick argues that the show-up identification procedure was unduly suggestive, and that therefore, the trial court abused its discretion in admitting the identification and the evidence seized pursuant to the identification. The Fourteenth Amendment's guarantee of due process of law requires the suppression of evidence when the procedure used during a pretrial identification is impermissibly suggestive. Harris v. State, 716 N.E.2d 406, 410 (Ind. 1999). In some circumstances, a show-up identification "may be so unnecessarily suggestive and so conducive to irreparable mistake as to constitute a violation of due process." Hubbell v. State, 754 N.E.2d 884, 892 (Ind. 2001).

7

We review challenges to show-up identifications by examining the totality of the circumstances surrounding the identification, including (1) the opportunity of the witness to view the offender at the time of the crime; (2) the witness's degree of attention while observing the offender; (3) the accuracy of the witness's prior description of the offender; (4) the level of certainty demonstrated by the witness at the identification; and (5) the length of time between the crime and the identification. Adkins v. State, 703 N.E.2d 182, 186 (Ind. Ct. App. 1998). "'Identifications of a freshly apprehended suspect have been held to be not unnecessarily suggestive despite the suggestive factors unavoidably involved in such confrontations because of the value of the witness's observation of the suspect while the image of the offender is fresh in his mind.'" Lyles v. State, 834 N.E.2d 1035, 1044-45 (Ind. Ct. App. 2005) (quoting Lewis v. State, 554 N.E.2d 1133, 1135 (Ind. 1990)).

To support his argument that the identification was unduly suggestive, Rasnick points to Lathrop's testimony that, before the show-up identification, a police officer told her, "I think we have the people that had your stuff." Tr. pp. 47-48, 167. Rasnick argues:

> The identification of Rasnick and Campbell is unreliable since Lathrop and Haynes were given every expectation that they would make an identification once they arrived because of the suggestive statements by police that they had stopped the persons who had taken their property and that the car matched the description. Furthermore, the two alleged victims traveled to the scene together and made their identification together at the same time.

Appellant's Br. at 11-12.

Rasnick cites Stovall v. Denno, where the United States Supreme Court noted that "[t]he practice of showing suspects singly to persons for the purpose of identification, and

8

not as part of a lineup, has been widely condemned." Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967), overruled on other grounds. Rasnick declares the suggestiveness of the identification in the present case "far more egregious than cases where [our] Supreme Court found that show-up identifications should have been suppressed[.]" Specifically, he points to Wethington v. State, 560 N.E.2d 496 (Ind. 1990) and Hubbell v. State, 754 N.E.2d 884 (Ind. 2001).[4]

In Hubbell v. State, a witness in a homicide prosecution observed a man get into a van with a woman who was similar in appearance to the homicide victim. Hubbell v. State, 754 N.E.2d 884, 891 (Ind. 2001). The witness saw the man's face from a distance of about thirty feet and for approximately three seconds. The witness also noticed the license plate number of the van. Six hours after her observation, the police presented the appellant to her in a show-up procedure. The witness told officers that she thought the appellant was the man she had seen, but she was uncertain. Our supreme court held that this show-up identification was unduly suggestive, emphasizing the fact that the identification occurred six hours after the witness's observation. Id. at 892.

In Wethington v. State, two armed men broke into the house occupied by the three victims, bound the victims, and stole cash and marijuana. 560 N.E.2d 496, 501-02 (Ind. 1990). The police arrived shortly after the intruders had fled. While some of the officers

---

[4] In Wethington, our supreme court held that the erroneous admission of evidence of show-up identifications of the defendant was harmless where in-court identifications had an independent basis established by victims' ability to observe the defendant and their accurate descriptions of him, and where items stolen from the victims were discovered during initial pat down of the defendant. Wethington, 560 N.E.2d at 503. In Hubbell, our supreme court held that the admission of a witness's unduly suggestive pre-trial identification of a murder defendant was harmless error where the witness had given the defendant's license plate number to police, the witness's description roughly matched the defendant's actual appearance, police found incriminating fibers in the defendant's van, and the defendant made a confession. Hubbell, 754 N.E.2d at 892.

9

searched the house, other officers questioned the victims and compiled a collective description of the intruders. Two hours after the crime, two of the victims were taken in separate police cars to an intersection where the appellant and his accomplice had been stopped by a police officer. One of the victims testified that, en route to the scene, an officer told him that they had "picked up a couple of hitchhikers and wanted us to come and see if they [were] the right ones that had been to our house." Id. Another officer told the other victim that "they had picked up two hitchhikers on State Road 39 and they didn't know for sure if they [were] the men that [were] at our house, they just wanted us to go look at them to make sure." Id.

In Wethington, there were three police cars and at least seven law enforcement officers present at the intersection at which the identifications occurred. A gun and knife seized from the appellant were displayed on the hood of one of the police cars. Both victims identified the appellant immediately as one of the intruders. An hour later, three hours after the crime, all three victims were taken to a fire station where numerous law enforcement officers were present and the weapons were again displayed prominently. The victims again identified the appellant as one of the intruders. The Indiana Supreme Court held that these show-up identifications were "egregious" and "deserving of the strongest judicial condemnation." Id. at 502.

The present case is distinguishable from both Hubbell and Wethington, most importantly because the identification occurred within thirty minutes of the crime. Moreover, the stolen goods were not removed from the car until after the victims had identified Rasnick. Although there is some conflict in the testimony, en route to the

10

scene, the police did not make any statement that the people detained were definitely those the victims had seen in the dormitory and did not state that they had found the victims' property.[5] When the victims arrived at the scene of the stopped vehicle, both quickly and unequivocally identified Rasnick as the man they had seen, despite the presence of another male at the scene.

Therefore, in light of the totality of the circumstances surrounding this identification, we conclude that the show-up identification procedure was not unduly suggestive, and the trial court did not abuse its discretion in admitting the identification and the evidence seized pursuant to the identification.

### 2) *In-Court Identification*

Relying on his arguments concerning the show-up identification, Rasnick also argues that "[t]he impermissible suggestibility and unreliability of the show-up identification tainted the in-court identification of Rasnick, due to the fact that he had already been seen at the scene of his arrest and improperly identified by Lathrop and Haynes." Appellant's Br. at 12.

Even where a show-up identification is deemed unduly suggestive, a subsequent, in-court identification may still be admissible if the State proves that an independent basis for the in-court identification exists. See Gordon v. State, 981 N.E.2d 1215, 1219 (Ind. Ct. App. 2013). In determining whether an independent basis for the in-court identification exists, the inquiry is whether, under the totality of the circumstances

---

[5] The record indicates that Lathrop testified in a deposition that the police said, "I think we have the people that had your stuff." Tr. p. 47. At trial, Lathrop did not recall making that statement. Id.

surrounding the witness's initial observation of the perpetrator at the scene of the crime, the witness could (1) resist any suggestiveness inherent in the improper show-up staged by the police and (2) make an accurate in-court identification based on that earlier observation. See Hale v. State, 976 N.E.2d 119, 124 (Ind. Ct. App. 2012).

Here, both Lathrop and Haynes were able to observe Rasnick closely at the dormitory. The victims discovered the burglary immediately after encountering Rasnick. Both victims noticed the tattoo on the back of Rasnick's leg. The victims immediately provided to police a detailed description of Rasnick. Therefore, there was an independent basis for the victims' in-court identification of Rasnick. See Heiman v. State, 511 N.E.2d 458, 460 (Ind. 1987) (finding sufficient independent basis to support admission of in-court identification where both victims "had the opportunity to view appellant at close range under good lighting conditions, both gave an accurate description and both independently and unequivocally identified appellant from the original photo array on the day of the crime").

Under these facts, even if we were to conclude that the trial court abused its discretion by admitting evidence of the show-up identification, the trial court's admission of the victims' subsequent in-court identifications of Rasnick was proper.

B. *GPS Evidence*

Rasnick next asserts that the trial court abused its discretion by admitting GPS evidence pointing to Rasnick's movements on the day of the burglary. Specifically, Rasnick argues that the "prejudicial value of the GPS evidence far outweighed any probative value" because the "mere fact that he was on GPS" likely "created speculation

12

by the jury as to why he was being monitored." Appellant's Br. at 14. He contends that the GPS evidence contained "minimal probative value" because "[t]he fact that Rasnick, according to GPS, was at Hanover College in and of itself does not prove he participated in any crime." Id.

Indiana Evidence Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" However, all evidence is "inherently prejudicial" and, therefore, the Rule 403 analysis "boils down to a balance of the probative value of the proffered evidence against the likely unfair prejudicial impact of that evidence." Duvall v. State, 978 N.E.2d 417, 428 (Ind. Ct. App. 2012) (citing Carter v. State, 766 N.E.2d 377, 382 (Ind. 2002)). This balancing is "a discretionary task best performed by the trial court." Bostick v. State, 773 N.E.2d 266, 271 (Ind. 2002).

Here, the GPS data was probative because it provided objective evidence as to Rasnick's locations and movements during the precise period of time in which the crime occurred. The data placed Rasnick at both the scene of the burglary and at the scene of the arrest. Furthermore, any improper prejudicial effect was limited very effectively at trial by the court. Before presentation of the evidence, the parties stipulated that the jury would neither be advised that Rasnick was on GPS monitoring because he was a parolee, nor that he was being monitored by Scott County Community Corrections at the time of the burglary. When questioning the witness who testified as to the GPS information, the

13

State was careful not to elicit any testimony as to the witness's place of employment[6], the fact that Rasnick was on parole, or Rasnick's prior convictions. The jury was not informed that the method of monitoring was a tracking bracelet. The trial court offered to give a limiting instruction to the jury regarding the GPS evidence, but Rasnick's counsel declined.

Given the care taken by the trial court to minimize speculation by the jury as to the purpose of the GPS monitoring, we conclude that the probative value of the GPS data substantially outweighs any potential prejudicial effect. Therefore, the trial court did not abuse its discretion in admitting the evidence.

*C. Harmless Error*

Even if we concluded that the trial court erred in admitting the identity confirmation and stolen items obtained from the show-up identification procedure and the GPS tracking evidence, these errors would nonetheless be harmless. An error is harmless if there is "substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction." Turner v. State, 953 N.E.2d 1039, 1059 (Ind. 2011). "Generally, errors in the admission of evidence are to be disregarded unless they affect the substantial rights of a party." Id.

In Wethington, one of the cases upon which Rasnick relies, our supreme court held that even though the show-up identification of the appellant was unduly suggestive, "it is clear as well that the error in admitting the evidence of the pre-trial confrontations was harmless beyond a reasonable doubt." Wethington, 560 N.E.2d at 503. There, the

_____

[6] The witness, Amanda Hurt, was a Community Corrections Officer with Scott County.

victims observed the appellant in a well-lit room, the appellant was unmasked and came within inches of the victims' faces when he bound their hands, the victims' descriptions of the appellant corresponded roughly with the appellant's actual appearance, and the victims later testified that when they saw the appellant at the scene of the identification, they knew immediately that he was one of the intruders.

Likewise, in Hubbell, our supreme court found that the witness's identification of the appellant's van by license plate number and the description of the appellant the witness provided prior to the show-up identification, together with the fiber and grass evidence found in the appellant's van and the appellant's confession, rendered any error in the admission of the witness's identification harmless. Hubbell, 754 N.E.2d at 892.

In the present case, there was substantial independent evidence of guilt supporting Rasnick's conviction such that we are satisfied that any error was harmless. Lathrop and Haynes closely observed Rasnick in a well-lit dormitory lobby. They both immediately and unequivocally identified him at the location where the car was stopped. Their descriptions of Rasnick roughly matched with his actual appearance.[7] Jessica Stark, one of the four occupants of the car on the night of the crime and a longtime friend of Rasnick's, testified that Rasnick drove the car to the dormitory, entered the building, and later exited carrying a blue backpack. The stolen items were recovered from the car. GPS data placed Rasnick at the dorm and at the location where the car was stopped. In

[7] Both victims testified that, at the scene of the crime, Rasnick was wearing a light-colored hooded sweatshirt and shorts. Lathrop testified that, when she saw Rasnick and Campbell, Rasnick was carrying the black trash bag. Haynes testified that, when she saw Rasnick and Campbell, Campbell was carrying the trash bag. Lathrop testified that Rasnick was not wearing the hooded sweatshirt at the scene of the identification. Haynes could not remember whether or not Rasnick was wearing the hooded sweatshirt. Both victims testified that they did not see the black trash bag at the scene of the identification.

15

light of this overwhelming evidence of Rasnick's guilt, we conclude that any error in admitting the show-up identification and GPS evidence was harmless.

## II. Sufficiency of Evidence

Rasnick next claims that the State presented insufficient evidence to support his conviction for burglary. Upon a challenge to the sufficiency of evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. Instead, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). We consider only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

To sustain a conviction for Class B felony burglary, the State was required to prove beyond a reasonable doubt that Rasnick broke and entered the victims' dwelling with the intent to commit a felony therein.[8] Ind. Code § 35-43-2-1. Rasnick argues that the State failed to prove that he was the person the victims saw inside the dormitory. He claims that the evidence presented did not exclude Stidham, the other male passenger in the car, as the individual who burglarized the victims' dorm room. Rasnick emphasizes that Stidham also has tattoos and that Tamara Campbell's testimony indicates that it was Stidham who threw one of the stolen cameras out of the window.

---

[8] Ind. Code § 35-43-2-1 provides, "[a] person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or the building or structure is a dwelling[.]"

16

Rasnick's claims in this regard are really a request that we reweigh the evidence, which we may not do. See McHenry v. State, 820 N.E.2d 124 (Ind. 2005); Stewart v. State, 866 N.E.2d 858 (Ind. Ct. App. 2007); Calhoon v. State, 842 N.E.2d 432 (Ind. Ct. App. 2006). At trial, Lathrop testified that she observed Rasnick and Campbell walking through the dormitory basement from the direction of her room. She stated that she saw both of their faces, made eye contact with them, and then watched them walk up the stairs out of the basement. She testified that she viewed Rasnick's tattoo at eye level and noted its distinctive shape, size, color, and location.

Haynes testified that she saw Rasnick and Campbell when they reached the dormitory's first floor from the basement. She said, "[t]hey looked really suspicious, so I was keeping my eye on them." Tr. p. 194. She testified that they passed her in the "pretty thin hallway" closely enough that they were within an arm's reach of her. Tr. p. 195. Like Lathrop, Haynes noticed Rasnick's tattoo.

Less than half an hour after the burglary, police stopped Rasnick driving a car matching the description provided by the victims. When brought to the scene, both victims unequivocally identified Rasnick as the person they had seen in the dormitory. The police searched the vehicle and discovered Lathrop's backpack, Haynes's laptop, and one of the stolen cameras on the floorboard of the front passenger seat. Another of the cameras was found a short distance away. GPS monitoring records show that Rasnick was on campus and even indicate that he was inside the dormitory when the crime

17

occurred.[9]  Both victims identified Rasnick in court and Lathrop identified Rasnick's tattoo in court.  Stark and Campbell testified that it was Rasnick, not Stidham, who entered the dormitory and later exited carrying the blue backpack containing the stolen items.  Stark also testified that, while Stidham does have tattoos, she did not believe that he has any tattoos on either of his legs.  This evidence is sufficient to support Rasnick's burglary conviction.

### III. Inappropriate Sentence

Finally, Rasnick argues that his aggregate thirty-six year sentence is inappropriate in light of the nature of the offense and the character of the offender.  This court may revise a sentence otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Appellate Rule 7(B).

In our review of sentences, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." Trainor v. State, 950 N.E.2d 352, 355 (Ind. Ct. App. 2011), trans. denied.  Our principal role when reviewing and revising sentences "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, [] not to achieve a perceived 'correct' result in each case."  Cardwell, 895 N.E.2d 1219,

---

[9]  State's Exhibit 21 featured a red dot indicating Rasnick's precise location on the GPS diagram "to the right of Wiley Hall and … a dot to the left of Wiley Hall and a line straight up."  Tr. pp. 303-04.

1225 (Ind. 2008). It is the burden of the appellant to persuade us that the sentence imposed by the trial court is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

The sentencing range for Class B felony burglary is six to twenty years, with the advisory sentence being ten years. Ind. Code § 35-50-2-5. The sentencing range for a habitual offender enhancement is six to twenty years. Ind. Code § 35-50-2-8. Here, the trial court sentenced Rasnick to thirty-six years, or four years less than the maximum sentence he could have received for the underlying crime and his habitual status.

On October 24, 2012, following a sentencing hearing, the trial court issued a sentencing order, which found five aggravating factors, including Rasnick's prior criminal history, his failure to appear at trial, his parole violation, the unlikelihood that Rasnick would respond to a short prison term, and the fact that Rasnick violated the law while out on bond in the present case. The trial court found one mitigating factor: the fact that Rasnick was helping to care for his mother, who was suffering from cancer.

Rasnick argues that the trial court "placed too much emphasis" on several of the aggravating factors. Appellant's Br. at 17. He seeks to downplay the factors, claiming that his failure to appear on the morning of trial was caused by problems with his transportation and that, eventually, he "willingly went with Deputy Gibson who was looking for him." Appellant's Br. at 18. He further notes that "[a]ny parole [he] had was up by the time [he] requested a bond reduction in January 2012" and that he received no punishment for his failure to appear or violation of parole. Id. Finally, he asserts that he

19

entered guilty pleas to driving while suspended and the habitual offender count and "received little consideration for his concessions on these parts of the case." Id.

Rasnick also claims that the thirty-six year sentence was inappropriate given the nature of the offense. He states:

> This was an unplanned entry into an unlocked dormitory building and room where a few electronic items were quickly taken. While burglary is always a serious offense, a close to maximum sentence on that charge should be reserved for situations involving pre-planning, forced entry, significant property loss and significant property damage. None of that was present here.

Appellant's Br. at 18.

Despite Rasnick's attempts to minimize the nature of his offenses, the facts in this case, and Rasnick's criminal history, strongly support the trial court's sentencing judgment. Rasnick entered into a Hanover College dormitory room without the occupants' consent and stole expensive electronics, later destroying one of the cameras he had stolen. He has been convicted of five other felonies, one of which was a burglary and two of which were thefts, as well as of three misdemeanors. He has been arrested eighteen times since 2002. This court has often noted that the significance of a defendant's criminal history varies based on the gravity, nature, and number of prior offenses as they relate to the current offense. See Bryant v. State, 841 N.E.2d 1154, 1157 (Ind. 2006) ("a former conviction for burglary might make it appropriate to impose the maximum sentence for a subsequent theft"); Wooley v. State, 716 N.E.2d 919, 929 n. 4 (Ind. 1999) (noting that a prior conviction for OWI would be a significant aggravator in a subsequent alcohol-related offense). Rasnick's prior convictions involving burglary and

theft and the fact that Rasnick committed this offense while on parole do not reflect well on his character.

Therefore, giving due consideration to the trial court's sentencing discretion, and considering the nature of the offense and the character of the offender, we conclude that the sentence imposed by the trial court is not inappropriate.

**Conclusion**

The trial court did not abuse its discretion by admitting the show-up identification of Rasnick and GPS evidence of his whereabouts at the time of the crime and arrest. The evidence provided by the State was sufficient to support Rasnick's conviction for burglary, and any error in the admission of that evidence was harmless error. Rasnick's sentence was not inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

NAJAM, J., and KIRSCH, J., concur.