## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 12 2017, 8:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Office and
Cass County Public Defender
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher Spahr Brown, *Appellant-Defendant,* | July 12, 2017 |
| | Court of Appeals Case No. 09A02-1610-CR-2385 |
| v. | Appeal from the Cass Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Richard Maughmer, Judge |
| | Trial Court Cause No. 09D02-1603-F2-6 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a second jury trial, Christopher Brown was convicted of conspiracy to commit robbery resulting in serious bodily injury and robbery resulting in serious bodily injury, both Level 2 felonies. Brown was also found to be an habitual offender. Brown now appeals, raising six issues for our review, which we restate as 1) whether Brown was deprived of his right to counsel at a critical stage in the proceedings, 2) whether the trial court committed fundamental error in permitting the State to amend the charging information, 3) whether the trial court erred in admitting identification evidence, 4) whether the trial court erred in modifying the jury instructions during deliberations, 5) whether Brown's convictions violate Indiana's prohibition against double jeopardy, and 6) whether the trial court's sentencing order contains an error. We conclude Brown was not deprived of his right to counsel at the initial hearing, the trial court did not commit fundamental error in permitting the State to amend the charging information, and the trial court did not err in admitting evidence. In addition, even assuming the trial court erred in modifying the jury instructions, Brown has not shown how the modification prejudiced him. However, Brown's convictions violate double jeopardy, in addition to which the trial court's sentencing order contains an error. For these reasons, we affirm in part, reverse in part, and remand with instructions.

# Facts and Procedural History

[2] In early January 2015, Ashley Reinholt stayed for several days at a Super 8 Motel in Logansport, Indiana. Sanjay Amin, an employee and resident of the Super 8, knew Reinholt. During this time, Amin observed Brown and his cousin, Brandon Black, often visiting Reinholt.

[3] On January 17, 2015, Reinholt approached Amin offering sex in exchange for money. The pair agreed Amin would meet Reinholt at the nearby Manor Motel and pay Reinholt $300 for sex. Thereafter, Reinholt informed Brown of the agreement and Brown suggested a plan to rob Amin once Amin arrived at the Manor Motel. Brown then called Black and informed him of the plan. The plan provided Reinholt would leave the motel room unlocked so Brown and Black could access the room upon Amin's arrival. Later that evening, Reinholt and Amin met at the Super 8, Amin paid Reinholt $50 to pay for a room at the Manor Motel, and the pair agreed to meet at the Manor Motel a few hours later.

[4] At approximately 11:00 p.m., Amin observed Brown and Black pick up Reinholt at the Super 8 and followed the trio to the Manor Motel. Reinholt then rented a room and texted Amin *and* Brown the room number. Before entering the room, Amin observed Brown and Black appearing to leave. Thereafter, Amin entered the room with Reinholt and placed $300 on the nightstand. Reinholt left the door unlocked. After Reinholt told Amin to take all his clothes off, Brown and Black bolted into the room with masks covering their faces. Amin recognized it was Brown and Black based on the clothing they were wearing as it was the same clothing the pair had been wearing

previously. In addition, Amin also heard either Brown or Black say Reinholt's name. Brown then punched Amin, knocking out three of his teeth. Amin also suffered injuries to his face and a laceration to his eye. Brown and Black then left the room with the $300 from the nightstand and Amin's wallet which contained $500. Bleeding profusely, Amin returned to the Super 8, and a few minutes later, Reinholt texted Brown requesting he pick her up from the Manor Motel and drop her off at the Super 8. At the Super 8, Amin observed Reinholt, Brown, and Black enter the lobby together. Brown and Black quickly left.

[5] Around midnight, officers from the Logansport Police Department arrived at the Super 8 and Reinholt and Amin explained they were victims of a robbery. Suspicious of Reinholt's involvement, law enforcement explained it would leave the premises and allow Reinholt to relax before speaking with her the following day. Once it appeared law enforcement left, Reinholt immediately texted Brown to come pick her up. Unbeknownst to Brown and Reinholt, law enforcement remained nearby. Brown and Black arrived at the Super 8 and were stopped by law enforcement. Law enforcement then showed Brown and Black to Amin and Amin affirmed the pair were the ones who robbed him.

[6] On January 19, 2015, the State charged Brown with conspiracy to commit robbery as a Level 3 felony and battery as a Level 6 felony. The State also alleged Brown was an habitual offender. Following a jury trial in February 2016, the trial court declared a mistrial after the jury deadlocked.

[7] On February 24, 2016, the State filed an amendment to the charging information to include three additional counts against Brown: conspiracy to commit robbery resulting in serious bodily injury as a Level 2 felony ("Count III"), robbery resulting in serious bodily injury as a Level 2 felony ("Count IV"), and battery resulting in serious bodily injury as a Level 5 felony ("Count V"). On February 29, 2016, the trial court held an "Initial hearing" with respect to these new charges. Appellant's Appendix, Volume II at 158. At the hearing, the State informed the trial court that it would move to dismiss the original two counts that had resulted in a mistrial and proceed only on the three new charges. Brown's counsel was not present at the hearing but the trial court entered a plea of not guilty to the new charges on Brown's behalf. The State did not file a motion to dismiss Counts I and II thereafter.

[8] On July 19, 2016, the State filed a new charging information against Brown and Black that included *only* Counts III-V, now renumbered Counts I-III (hereafter referred to as such), and the habitual offender allegation. Brown did not object. A joint trial commenced the following day. There, the State admitted evidence of the show-up identification and Amin also testified that Brown was one of his assailants. The jury found Brown guilty as charged. The trial court entered judgment of conviction on all counts, but vacated the battery conviction due to double jeopardy concerns. The trial court sentenced Brown to thirty years on both Counts I and III, to be served consecutively. The trial court also enhanced Brown's sentence by twenty years due to his habitual offender status for an

aggregate sentence of eighty years in the Indiana Department of Correction. This appeal ensued. Additional facts will be added as necessary.

# Discussion and Decision

## I. Right to Counsel

Brown contends he was deprived of his right to counsel because his counsel was not present at the initial hearing on the additional charges on February 29, 2016.

> A defendant's right to counsel arises at any point during a criminal proceeding in which the absence of counsel would erode the defendant's right to a fair trial. This includes any critical stage in which (1) incrimination may occur or (2) where the opportunity for effective defense must be seized or be foregone. An *initial hearing* conducted under Indiana's statutory scheme is *not a critical stage* of the criminal proceeding requiring the presence of counsel.

*Hopper v. State*, 957 N.E.2d 613, 616-17 (Ind. 2011) (emphasis added) (citations and internal quotation marks omitted). In addition, a critical stage exists when "the defendant is confronted with the intricacies of the law or the advocacy of the public prosecutor or prosecuting authorities." *Hernandez v. State*, 761 N.E.2d 845, 850 (Ind. 2002). A defendant bears the burden of establishing a stage in a proceeding is indeed "critical." *Id.*

The initial question is whether the February 29 hearing was an initial hearing. Brown argues the hearing was not an initial hearing, because contrary to typical

initial hearings, the State was attempting "to seek court approval to increase the severity and number of charges against Brown . . . ." Appellant's Reply Brief at 12. We find this hearing was an initial hearing for several reasons despite a decision in Brown's co-defendant's case, No. 09A04-1610-CR-2312, that found that the hearing was not an initial hearing, but rather a "continuance" of earlier proceedings.

[11] Following the mistrial, the State filed the amended information on February 24 and Brown's attorney, who did not appear at the hearing, was provided with a copy of the amended information. At the hearing on February 29, the trial court proceeded as if it was an initial hearing, evidenced notably by the trial court describing the hearing as an initial hearing, ensuring Brown's counsel had been provided a copy of the amended information, ensuring Brown understood the nature of the charges against him, and by stating: "I'm just here to notify these gentlemen what they're being charged with so they understand." Transcript, Volume II at 163. In addition, the trial court entered not guilty pleas on the new charges on Brown's behalf. The trial court's actions are consistent with the purpose of an initial hearing: inform a defendant of the nature of the charges against him pursuant to Indiana Code section 35-33-7-5. Further, Brown's counsel's absence at the hearing indicates he also treated this hearing as a mere formality akin to an initial hearing. While this may not have been a typical "initial hearing" because this hearing occurred after a mistrial, its purpose and procedure are typical. For this reason, Brown's argument fails.

[12]     This hearing was also not a critical stage of the proceedings requiring counsel's presence without regard to any title delineation of the hearing. Brown attempts to meet his burden of proving he was faced with the intricacies of the law and/or the advocacy of the prosecutor by arguing counsel's presence was necessary at the hearing in order to object to the State's amendment.[1] However, counsel's presence at the hearing was not critical; nothing occurred at the hearing that could have jeopardized Brown's rights, including his right to a fair trial. *See Hopper*, 957 N.E.2d at 616 ("A defendant's right to counsel arises at any point during a criminal proceeding in which the absence of counsel would erode the defendant's right to a fair trial."). Any objection that counsel might have made at the hearing was not waived nor was Brown's right to later challenge the State's amendment waived. All of Brown's concerns remained ripe for objections and motions by his counsel at a later date. We conclude Brown has not met his burden of proving he was deprived of his right to counsel at a critical stage of the proceedings.[2]

---

[1] Specifically, Brown contends his counsel could and would have objected to the State's amendment on the following bases: (1) the State did not follow Indiana law in amending the information, (2) the amendment violated his double jeopardy rights, and (3) the State's amendment was vindictive.

[2] Even assuming Brown was deprived of counsel at a critical stage, the deprivation is subject to harmless error analysis so long as the deprivation cannot be harmless by its very nature. *See Hernandez*, 761 N.E.2d at 849. As demonstrated above, Brown's counsel knew of the amended charges prior to the hearing and had approximately five months prior to trial to challenge the State's amendment, which he did not do. Thus, Brown had ample opportunity to object to the State's amendment and to prepare a meaningful defense against the charges. We conclude any deprivation of Brown's right to counsel was harmless.

# II. Amendments to the Charging Information

[13] As noted above, the original trial resulted in a mistrial and the State thereafter filed an amended charging information to include Counts I-III. The trial court then held an initial hearing on the additional charges on February 29, 2016. At the hearing, the State informed the trial court that it would be dismissing the original two charges that resulted in a mistrial. At no point during the following five months did Brown object to the State's action. On July 19, 2016, the day before the second trial commenced, the State filed an amended information including only Counts I-III and an habitual offender allegation. Brown also did not object to the July 19 amendment.[3]

[14] On appeal, Brown contends the State improperly amended the charging information on February 29 and July 19 thereby prejudicing his substantial rights. Specifically, he claims he was prejudiced because the amendment altered factual and legal defenses available to him. The State counters Brown waived any challenge to the filing of the amended information by failing to object to the amendments and/or to request a continuance. We agree with the State.

---

[3] It is necessary to note the State made two additional amendments to the charging information during trial. Unlike the two amendments that occurred prior to trial, when the State made these day-of-trial amendments, Brown objected each time and moved for a continuance. The trial court overruled each of the objections and denied the motions, reasoning the State's amendments during trial were technical, not substantive. We emphasize Brown does not challenge the trial court's decisions regarding the two in-court amendments; rather he only challenges the amendments that occurred prior to trial.

[15] Indiana Code section 35-34-1-5(b) permits amendments to the substance of charging information at any point prior to trial so long as the amendment does not prejudice the substantial rights of the defendant. *Wilson v. State*, 931 N.E.2d 914, 917-18 (Ind. Ct. App. 2010), *trans. denied*. A defendant seeking to challenge a pre-trial substantive amendment to the charging information must first object to the amendment, and if overruled, request a continuance. *Id*. at 918. Here, the record reveals the amendments were substantive in nature, Brown received notice of the amendments, and as the State properly asserts, Brown did not object to the amendments in either February or July. For this reason, Brown has waived any challenge to the trial court permitting the amendments. *See id*.

[16] Because Brown has waived this issue, he must now prove the trial court's act of permitting the State to amend the information constitutes fundamental error. *See Gibson v. State*, 51 N.E.3d 204, 211-12 (Ind. 2016). "Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged error[ ][is] so prejudicial to the defendant's rights as to make a fair trial impossible." *Id*. at 212 (alterations in original) (citation and internal quotation marks omitted). Thus, Brown must show the trial court erred in not *sua sponte* raising issues with the amendments when the issues clearly amounted to a blatant violation of Brown's right to due process and presented an undeniable and substantial potential for harm. *Id*.

[17] Based on our review of the record and assuming the trial court erred, we are not persuaded Brown suffered any prejudice, let alone prejudice amounting to

fundamental error. In February, the State filed an amendment to the charging information to include Counts I-III. Brown received notice of the State's amendment before the initial hearing on February 29, 2016, but counsel did not appear at the hearing. Over the next five months, Brown did not object to or challenge the State's action. And as to the State's July amendment, we merely note Brown received the benefit of the State dismissing two counts against him. Thus, by the start of trial, Brown had known of the charges against him for approximately five months and this period gave him time to prepare a meaningful defense. Following the State's amendments, Brown had a full opportunity to defend against the State's charges. Therefore, even assuming the trial court erred in permitting the State to amend the charges, we conclude Brown has waived this claim and failed to establish any error in amending the information amounts to fundamental error.

## III. Admission of Evidence

[18] We review a trial court's decision regarding the admission of evidence for an abuse of discretion. *Rasnick v. State*, 2 N.E.3d 17, 23 (Ind. Ct. App. 2013), *trans. denied*. A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id*.

[19] Brown contends the trial court abused its discretion in admitting evidence of Amin's identification of Brown during the show-up procedure. Specifically, he claims the show-up procedure was unduly suggestive and therefore the

admission of any evidence of Amin identifying Brown as an assailant, whether during the show-up or at trial, was an abuse of discretion. The State counters the identification procedure was not unduly suggestive, and in the alternative, Amin's in-court identification of Brown was supported by an independent basis. At the very least, we agree Amin's in-court identification of Brown was supported by an independent basis and therefore any error in admission of evidence pertaining to Amin's identification of Brown during the show-up procedure is harmless.

[20] Due process of law requires the suppression of pretrial identification if the identification procedure is unduly suggestive. *Id*. However,

> Even where a show-up identification is deemed unduly suggestive, a subsequent, in-court identification may still be admissible if the State proves that an independent basis for the in-court identification exists. In determining whether an independent basis for the in-court identification exists, the inquiry is whether, under the totality of the circumstances surrounding the witness's initial observation of the perpetrator at the scene of the crime, the witness could (1) resist any suggestiveness inherent in the improper show-up staged by the police and (2) make an accurate in-court identification based on that earlier observation.

*Id*. at 25 (citations omitted).

[21] Here, the totality of the circumstances demonstrate Amin had previously observed Brown and his relationship with Reinholt, who was staying at the Super 8. On the date in question, Amin again observed Reinholt with Brown.

Specifically, Amin observed Reinholt get into the car at the Super 8 with Brown and Black, Amin followed the trio to the Manor Motel, Amin watched as Brown and Black stayed in the parking lot while Reinholt booked a room, and when Amin went to park his car, he further observed Brown and Black in the parking lot. When masked assailants entered the room, Amin recognized the pair as Brown and Black because the assailants were wearing the same clothes that Brown and Black were wearing the times Amin had previously seen them that day. In addition, Amin heard one of the assailants say Reinholt's name and later observed Brown and Black return to the Super 8 with Reinholt, further corroborating Amin's belief the masked assailants were Brown and Black. When law enforcement then conducted the show-up, Brown and Black were wearing the same clothes. In light of these observations, it is clear Amin could resist any suggestiveness in the show-up staged by police and confidently and accurately make an in-court identification of Brown. We conclude even if the trial court erred in admitting evidence of the show-up identification, such an error was harmless because the admission of Amin's in-court identification of Brown was not an abuse of discretion.

# IV. Jury Instructions and Verdict Forms

[22] As noted above, the State alleged Brown was an habitual offender based upon three prior unrelated felony convictions for perjury, theft, and burglary. The convictions for theft and perjury occurred in Indiana. As to the burglary conviction, Brown was convicted under Ohio cause number 09CR58 and the State admitted evidence showing the same. However, the habitual offender

information originally filed by the State showed the conviction under cause number 09CR56 and the jury instructions and special verdict form instructed the jury to decide—specifically—whether Brown was previously convicted for burglary in Ohio under cause number 09CR56. Thus, the original habitual offender information, the jury instructions, and the special verdict form all contained a scrivener's error.

[23]  During deliberations, the jury recognized the contradiction in the cause numbers and sought clarification from the trial court. The State apologized for its error and moved the trial court to amend the information to correct the cause number to reflect 09CR58. Brown objected and moved to dismiss the habitual offender enhancement. The trial court then denied both motions and informed the parties the proper way to remedy the situation would be for the State to move to dismiss either the perjury or theft allegation contained in the habitual offender information and then the trial court would supplement the original special verdict form with a general verdict form. The State dismissed its allegation that Brown was previously convicted of theft in Indiana. Over Brown's objection to the trial court's remedy, the trial court called the jury back into the courtroom, instructed the jury to ignore the State's theft allegation, and provided the jury with a general verdict form that did not contain any reference to the Ohio cause number. The jury found Brown to be an habitual offender.

[24]   On appeal, Brown challenges the trial court's act of altering the instructions and the verdict form after jury deliberations began. Specifically, he claims the procedure "effectively told the jury what it ought to do concerning the issue of

whether Brown was an habitual offender." Amended Appellant's Brief at 38. The State acknowledges the trial court's procedure was not appropriate, but counters any error did not prejudice Brown. We agree with the State.

[25] At the outset, we note Brown does not challenge whether the evidence is sufficient to support a finding that he is an habitual offender. During the habitual offender phase, the State alleged only one burglary conviction from Ohio and the evidence submitted by the State contained the correct cause number for this conviction. Due to a scrivener's error, however, the State included the incorrect cause number on the information and the trial court subsequently followed that information—not the evidence—when drafting the special verdict form, leading to the jury's confusion. Therefore, the jury was not confused as to whether Brown was in fact convicted of burglary in Ohio; rather, the jury was confused on how to *specifically* find on the special verdict form that Brown was convicted under cause number 09CR56 when the evidence showed Brown was convicted under 09CR58. To clear this confusion, the trial court merely switched the special verdict form to a general verdict form thereby alleviating the need for the jury to *specifically* find that Brown was convicted of burglary in Ohio under a *specific* cause number. In addition, the switch from the special verdict form to a general verdict form still tasked the jury with finding whether Brown was an habitual offender based on the evidence admitted by the State. We conclude any error in amending the jury instructions and verdict form during jury deliberations did not prejudice Brown.

# V. Double Jeopardy

[26] Brown contends his convictions for conspiracy to commit robbery causing serious bodily injury and robbery causing serious bodily injury violate Indiana's common law prohibition against double jeopardy because each charge was enhanced based upon evidence of the same injury to the same person. Specifically, he claims there is a reasonable probability the jury relied on evidence of Brown knocking out Amin's teeth in finding him guilty on each count. We agree.

[27] Article 1, Section 14 of the Indiana Constitution provides, "[n]o person shall be put in jeopardy twice for the same offense." In addition to this constitutional protection, our supreme court has long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy but are not governed by the constitutional test. *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002). Among these common-law rules is the doctrine that where a felony conviction is enhanced based on the same bodily injury that forms the basis of or enhances another conviction, the two convictions cannot stand as is. *See id.*; *Smith v. State*, 872 N.E.2d 169, 176-77 (Ind. Ct. App. 2007) ("[W]e conclude that if the same bodily injury was used to enhance [the defendant's] convictions of burglary to a Class A felony as was used to enhance his conviction of robbery to a Class A felony, entering a judgment of conviction for both counts would be improper."), *trans. denied*.

[28]     Here, the State charged Brown under Count I with conspiracy to commit robbery as a Level 2 felony, alleging Brown caused serious bodily injury by knocking out three of Amin's teeth. As to Count II, the State charged Brown with robbery as a Level 2 felony, alleging the same serious bodily injury. The evidence admitted at trial demonstrates Amin also suffered injuries to his eye and face. Neither the trial court's preliminary nor final instructions reference the specifics of Amin's injuries except for the instructions restating the charging information. And during closing arguments when addressing the allegations of serious bodily injury on both counts, the State consistently referenced Brown's act of knocking out Amin's teeth. Therefore, despite there being evidence Amin suffered other injuries apart from losing his teeth, we conclude the serious bodily injury upon which each conviction rests is the injury to his teeth.

[29]     Because Brown's convictions violate double jeopardy, we must next address the remedy. "When two convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation." *Richardson v. State*, 717 N.E.2d 32, 54 (Ind. 1999). Indiana Code section 35-42-5-1 provides,

> A person who knowingly or intentionally takes property from another person or from the presence of another person:
>
> > (1) by using or threatening the use of force on any person; or
> > (2) by putting any person in fear;

commits robbery, a Level 5 felony. However, the offense is a Level 3 felony if it . . . results in bodily injury to any person other than a defendant, and a Level 2 felony if it results in serious bodily injury to any person other than a defendant.

[30] Brown argues his conviction for robbery as a Level 2 felony must be reduced to a Level 5 felony which does not include an element of causing bodily injury. The State counters Brown's conviction for robbery as a Level 2 felony should be reduced to robbery causing bodily injury as a Level 3 felony because there is evidence Brown also injured Amin's eye and face. As noted above, the double jeopardy violation is that each of Brown's Level 2 felony convictions were enhanced because Brown knocked out Amin's teeth. If we were to accept the State's argument that the robbery conviction should be reduced to a Level 3 felony, the violation would not be cured because there would still be a double enhancement based on the evidence of Brown knocking out Amin's teeth. The only way to cure this double jeopardy violation is to reduce one of Brown's convictions to a lesser offense that does not include any bodily injury as a statutory element, that is, robbery as a Level 5 felony. *See Montgomery v. State*, 21 N.E.3d 846, 866-67 (Ind. Ct. App. 2014), *trans. denied*. We therefore reverse Brown's conviction for robbery as a Level 2 felony, instruct the trial court on remand to enter judgment of conviction for robbery as a Level 5 felony and sentence Brown to six years, the maximum sentence for a Level 5 felony, to be served consecutively to Brown's thirty-year sentence on Count I. This sentence is in accord with the trial court's original maximum and consecutive sentence. *See Young v. State*, 57 N.E.3d 857, 860 (Ind. Ct. App. 2016) ("Upon remedying a

double jeopardy issue, the trial court need not undertake a full sentencing reevaluation, but rather the reviewing court will make this determination itself, being mindful of the penal consequences that the trial court found appropriate.") (citation and internal quotation marks omitted), *trans. denied*.

# VI.  Sentencing Order

[31]     Brown contends the trial court's sentencing order is at odds with the abstract of judgment and the trial court's sentencing statement.  Specifically, he argues the sentencing order does not reflect the trial court's intent to vacate the battery conviction.  The State agrees.  On remand, the trial court is also instructed to amend its sentencing order to reflect that Brown's conviction for battery is vacated.

# Conclusion

[32]     We conclude Brown was not deprived of his right to counsel at a critical stage of the proceedings, the trial court did not commit fundamental error in permitting the State to amend the charging information prior to trial, and the trial court did not err in admitting identification evidence.  In addition, even assuming the trial court erred in modifying the jury instructions, Brown has not shown prejudice from the error.  We further conclude, however, Brown's convictions violate double jeopardy and the trial court's sentencing order contains an error.  On remand, the trial court is to enter judgment of conviction for robbery as a Level 5 felony and sentence Brown on that count to six years, the maximum for a Level 5 felony.  The trial court is also instructed on remand

to amend the sentencing order to reflect that Brown's conviction for battery is vacated. Accordingly, we affirm in part, reverse in part, and remand with instructions.

[33] Affirmed in part, reversed in part, and remanded.

Vaidik, C.J., and Bailey, J., concur.