## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 07 2019, 9:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Chad A. Montgomery
Montgomery Law Office
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Zachary Sondgeroth,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 7, 2019

Court of Appeals Case No.
18A-CR-1932

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause No.
79D02-1712-F3-33

**Bradford, Judge.**

# Case Summary

[1]     In November of 2017, Zachary Sondgeroth and juveniles G.L. and W.D. ("the Juveniles") robbed Anthony Cutillo at gunpoint. Upon being detained by police officers in a parking lot, Sondgeroth was identified by Cutillo as one of the individuals who robbed him. The State charged Sondgeroth with, *inter alia*, Level 3 felony armed robbery, Level 3 felony conspiracy to commit armed robbery, Class A misdemeanor carrying a handgun without a license, and Class A misdemeanor theft. A jury found Sondgeroth guilty as charged, and he received an aggregate sentence of twenty years of incarceration. Sondgeroth contends that the trial court erroneously allowed the show-up identification evidence and prior bad act evidence to be admitted at trial. Because we disagree, we affirm.

# Facts and Procedural History

[2]     On November 29, 2017, at approximately 7:45 p.m., Cutillo was walking toward a Meijer gas station when Sondgeroth pulled his vehicle over near Cutillo and began conversing with him. Shortly thereafter, the Juveniles approached Cutillo and held him at gunpoint. Upon taking Cutillo's possessions, the Juveniles entered Sondgeroth's vehicle and Sondgeroth drove away. Benjamin Grant witnessed the robbery, followed Sondgeroth's vehicle, and called police to inform them that the vehicle had parked at a nearby church. Police arrived at the church and removed Sondgeroth and the Juveniles from the vehicle. Inside the vehicle, police discovered a handgun underneath the

driver's seat and various items which were later confirmed to be Cutillo's. At approximately 8:22 p.m., an officer drove Cutillo to the church parking lot for Cutillo to attempt to identify the individuals who had robbed him. Cutillo was informed by officers that they had detained three potential suspects. Cutillo identified Sondgeroth and the Juveniles as the three individuals who had robbed him, stating confidently that he was "a hundred percent certain." Tr. Vol. II p. 234.

[3] On December 6, 2017, the State charged Sondgeroth with Level 3 felony armed robbery, Level 3 felony conspiracy to commit armed robbery, Class A misdemeanor carrying a handgun without a license, and Class A misdemeanor theft.[1] Sondgeroth moved to suppress the show-up identification and any subsequent in-court identifications, which motion was denied. A jury trial was held on May 8, 2018, through May 9, 2018, and Sondgeroth was found guilty as charged. The trial court sentenced Sondgeroth to an aggregate sentence of twenty years of incarceration.

# Discussion and Decision

---

[1] The State also charged Sondgeroth with Level 4 felony unlawful possession of a firearm by a serious violent felon, Level 5 felony carrying a handgun without a license, and Level 6 felony theft. Sondgeroth proceeded to a bench trial on those charges and was convicted; however, he does not appeal those convictions.

# I. Show-up Identification

Sondgeroth contends that the trial court erroneously allowed the show-up identification evidence to be admitted at trial. Specifically, Sondgeroth contends that the show-up identification procedure was unduly suggestive. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Baker v. State*, 997 N.E.2d 67, 70 (Ind. Ct. App. 2013). "An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court." *Id.*

When the procedure administered during a pretrial identification is impermissibly suggestive, the Fourteenth Amendment's guarantee of due process requires the suppression of such evidence. *Rasnick v. State*, 2 N.E.3d 17, 23 (Ind. Ct. App. 2013), *trans. denied*. Some show-up identification procedures "may be so unnecessarily suggestive and so conducive to irreparable mistake as to constitute a violation of due process." *Hubbell v. State*, 754 N.E.2d 884, 892 (Ind. 2001). Due process does not require a per se exclusion of pre-trial identification evidence involving suggestive or unnecessary procedures but, rather, "admission of such evidence if, under the totality of circumstances, the identification is reliable." *Id.*

> We review challenges to show-up identifications by examining the totality of the circumstances surrounding the identification, including (1) the opportunity of the witness to view the offender at the time of the crime; (2) the witness's degree of attention while observing the offender; (3) the accuracy of the witness's prior description of the offender; (4) the level of certainty demonstrated by the witness at the identification; and (5) the

length of time between the crime and the identification. Identifications of a freshly apprehended suspect have been held to be not unnecessarily suggestive despite the suggestive factors unavoidably involved in such confrontations because of the value of the witness's observation of the suspect while the image of the offender is fresh in his mind.

*Rasnick*, 2 N.E.3d at 23 (internal citations and quotations omitted).

[6] We conclude that the show-up identification procedure in the current matter was not impermissibly suggestive. Cutillo had ample opportunity to view Sondgeroth when Sondgeroth engaged him in conversation just before the robbery. The two stood approximately ten to fifteen feet apart as Sondgeroth asked Cutillo for directions and questioned why Cutillo was carrying a clipboard. Prior to the show-up identification, Cutillo was able to describe Sondgeroth to police as a white male, wearing a black t-shirt, and older in age than the two other males, which was an accurate description upon identification. Cutillo was "a hundred percent certain" Sondgeroth was one of the three individuals who had robbed him, and only approximately thirty-seven minutes had passed since the robbery. While Sondgeroth is correct in noting that an officer told Cutillo that there were three potential suspects, six or seven police officers were present during the identification, and all three individuals were handcuffed, these facts do not make the identification procedure impermissibly suggestive. Rather, they are merely consistent with the scene of an alleged armed robbery and actions taken to maintain officer and public

safety. Given the totality of the circumstances, Sondgeroth has failed to establish that the trial court abused its discretion.

# II. Prior Bad Act

[7] Sondgeroth contends that the trial court abused its discretion by allowing evidence of a prior bad act. Specifically, Sondgeroth contends that the trial court erroneously allowed the State to introduce evidence regarding Sondgeroth allegedly stealing two cartons of cigarettes from a gas station prior to committing the offenses in the current matter to establish motive at trial.[2] We need not address Sondgeroth's contention on the merits as any error that may have occurred could only be considered harmless.

> An error is harmless when it results in no prejudice to the substantial rights of a party. While there are important contextual variations to this rule, the basic premise holds that a conviction may stand when the error had no bearing on the outcome of the case. At its core, the harmless-error rule is a practical one, embodying the principle that courts should exercise judgment in preference to the automatic reversal for error and ignore errors that do not affect the essential fairness of the trial.

*Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018) (internal citations, quotations, and footnotes omitted).

---

[2] One of the Juveniles, W.D., testified that after stealing the cigarettes, Sondgeroth challenged the Juveniles to commit something better than his theft, which led to the robbery of Cutillo.

[8] In the current matter, prior bad act aside, the evidence of Sondgeroth's guilt was overwhelming. First, Grant witnessed Sondgeroth and the Juveniles rob Cutillo, followed Sondgeroth's vehicle into the church parking lot, and reported the crime to police, keeping vigil until police arrived on the scene. Moreover, Cutillo identified Sondgeroth as one of the three individuals who had robbed him not only on the night of the crime but in court as well. Finally, the gun used in the robbery and the items taken from Cutillo during the robbery were recovered by police in Sondgeroth's vehicle within a short period of time following the robbery. Therefore, Sondgeroth cannot show that the admission of evidence of his prior alleged theft prejudiced his substantial rights.

[9] The judgment of the trial court is affirmed.

Bailey, J, and Brown, J., concur.